UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

ERIC EHMANN,

                Plaintiff,

      v.                                          Case No. 25-CV-528

TRANSCONTINENTAL US, LLC,

                Defendant.

## DECISION AND ORDER

### 1. Background

In 2016 and 2017, Eric Ehmann sued a past employer for violations of the Fair Labor Standards Act. (ECF No. 1, ¶ 22); *see also* 16-cv-00247-WCG *Ehmann v. Pierce Manufacturing*, (E.D. Wis.); 17-cv-00903-WCG *Ehmann v. Pierce Manufacturing* (E.D. Wis.). He alleges that his subsequent employer, Transcontinental US, LLC, learned of his prior lawsuits and fired him because of them. In support, he notes that managers discussed his prior "protected activity" with him. (ECF No. 1, ¶ 27.) And when Ehmann requested two hours off to attend a court hearing in an unrelated matter, his manager said that because he is in the "business of filing lawsuits" he could take time off only if he had vacation time to use. (ECF No. 1, ¶ 26.) Ehmann alleges "[t]hat was one of the most shocking and offensive things any manager ever said to [him] over the course of decades in the workforce." (ECF No. 1, ¶ 26.)

Transcontinental has moved to dismiss Ehmann's complaint. (ECF No. 16.) It alleges that Ehmann's allegations are facially implausible and, in any event, do not give rise to a FLSA retaliation claim. Specifically, Transcontinental argues that the FLSA protects employees from retaliation only by the employer against whom the protected activity was directed.

2. **Motion to Dismiss Standard**

To avoid dismissal under Rule 12(b)(6), a complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The complaint must, at a minimum, "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555.

In evaluating a motion to dismiss under Rule 12(b)(6), courts must "accept the well-pleaded facts in the complaint as true"; however, "legal conclusions and conclusory allegations merely reciting the elements of the claim are not entitled to this presumption of truth." *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011). Courts also "draw all reasonable inferences from these facts in favor of the plaintiff." *Alvarado v. Litscher*, 267 F.3d 648, 651 (7th Cir. 2001)

While a plaintiff is not required to plead detailed factual allegations, there must be more than labels and conclusions. *See Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009) (holding that a complaint must provide sufficient facts to raise a right to

2
Case 1:25-cv-00528-BBC    Filed 08/05/25    Page 2 of 9    Document 20

relief above the speculative level, and mere labels or formulaic recitations are insufficient under Rule 12(b)(6)). Nevertheless, a complaint "need not allege each evidentiary element of a legal theory to survive a motion to dismiss." *Freeman v. Metro. Water Reclamation Dist. of Greater Chicago*, 927 F.3d 961, 965 (7th Cir. 2019) (citing *Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506, 510–14 (2002)). A plaintiff's failure to respond to an argument in a motion to dismiss, by itself, is not reason enough to grant the motion. *See Marcure v. Lynn*, 992 F.3d 625, 627 (7th Cir. 2021). The movant always retains the burden to prove that dismissal is appropriate. *See Brockett v. Effingham Cty.*, 116 F.4th 680, 685 n.1 (7th Cir. 2024).

3. Analysis

The FLSA makes it unlawful for any person "to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter …." 29 U.S.C. § 215(a)(3).

Transcontinental states that it "is not aware of any case law support for the idea that participating in a lawsuit against an entirely different employer is sufficient protected activity to uphold an FLSA retaliation claim against a subsequent employer." (ECF No. 17 at 5.) However, in reply (*see* ECF No. 19 at 3 fn. 1), Transcontinental acknowledged that it had found *Mays v. Rubiano, Inc.*, 560 F. Supp. 3d 1230, 1240 (N.D. Ind. 2021), where the court held that the FLSA barred an employer from retaliating against an employee for having previously sued a prior employer for violations of the FLSA.

Similarly, in addressing Title VII's comparable anti-retaliation provision, the court in *Patterson v. Ga. Pac., LLC*, 38 F.4th 1336, 1348-49, 29 Fla. L. Weekly Fed. C 1349 (11th Cir. 2022), rejected the argument that Transcontinental makes here. It said:

> There is nothing in the anti-retaliation provision's opposition clause that permits an employer to retaliate against one of its employees for opposing an unlawful employment practice of a former employer. The clause forbids retaliation by "an employer" against "*any* individual" for having "opposed *any* practice made an unlawful employment practice by [Title VII]." 42 U.S.C. § 2000e-3(a) (emphasis added). It doesn't say "opposed any practice *of a current employer* made an unlawful employment practice by [Title VII]." A former employer's unlawful employment practice is just as much an unlawful employment practice as one of a current employer. The statutory text makes no distinction between the two. Opposition is opposition, and *any* unlawful employment practice is *any* unlawful employment practice.

*Id.* at 1348-49 (alterations in original).

Retaliation for protected activity that an employee took regarding a past employer may be unusual, but it is not outside the plain text of the statute. The text of the FLSA's anti-retaliation provision proscribes retaliation against "any employee" for "any" protected activity. Nothing in the text suggests that only protected activity aimed at an employee's current employer may give rise to a retaliation claim.

*Dellinger v. Sci. Applications Int'l Corp.*, 649 F.3d 226 (4th Cir. 2011), on which Transcontinental relies, does not support a contrary conclusion. In *Dellinger*, the court dealt with the question of whether the FLSA's anti-retaliation provision applied to prospective employees. The court found such a claim to be inconsistent with the text of the statute because a prospective employee is not an "employee," and the prospective employer is not an "employer." *Id* at 229.

The pertinent question is whether Ehmann has alleged enough to state a plausible retaliation claim. Contrary to Transcontinental's argument, the years between Ehmann's lawsuits against his past employer and his termination by Transcontinental do not suggest the lack of a causal relationship. While close temporal proximity tends to support the inference of retaliation (and the lack of proximity tends to undermine such an inference), Transcontinental misapprehends the relevant event. Temporal proximity is relevant to causation because it reflects the intuition that any antipathy tends to mitigate with time. Thus, what is material is not when Ehmann engaged in protected activity but when Transcontinental learned of it. Although cases routinely refer to the protected activity as the relevant event, that language reflects merely that this is the usual factual scenario rather than a holding that the timing of an employer's knowledge is irrelevant.

It is unclear when Transcontinental learned of Ehmann's protected activity. At most, it was about two months (ECF No. 1, ¶¶ 20, 28), which is still short enough that it could support an inference of retaliation if there is other evidence. *See Coleman v. Donahoe*, 667 F.3d 835, 861 (7th Cir. 2012) ("Our cases reject any bright-line numeric rule, but when there is corroborating evidence of retaliatory motive, as there is here, an interval of a few weeks or even months may provide probative evidence of the required causal nexus.").

But Ehmann needs more. That Transcontinental knew that Ehmann had engaged in protected activity no more supports the inference of retaliation than would an employer's knowledge of an employee's protected status support the inference it

5

fired him because of his race, color, religion, sex, or national origin. *Cf.* 42 U.S.C. § 2000e-3(a). Ehmann was protected from retaliation for past protected activity, but his past protected activity does not confer upon him a claim against every subsequent employer that fired him. Thus, Ehmann must point to something that suggests Transcontinental harbored some antipathy with respect to his protected activity such that it fired him because of it.

Ehmann offers two such allegations. First, Transcontinental fired him only halfway through his 90-day probationary period and after his coworkers and supervisors rated his performance satisfactory. Second, a supervisor required him to use vacation time for a court appearance and referred to Ehmann as being in the "business of filing lawsuits." (ECF No. 1, ¶ 26.)

The fact that Transcontinental fired Ehmann only halfway into his probationary period and despite opinions that his work was satisfactory could tend to support his claim that he was fired for impermissible reason. But standing alone, the support is trivial. Employees are routinely fired at any point during their probationary periods; it is not as if an employer has any sort of obligation or expectation to retain an employee throughout a probationary period and only then make a decision as to their future employment. Employees are fired during their probationary periods for myriad reasons, many of which might not be inconsistent with generally favorable views as to the quality of their work. For example, an employee may be fired for attendance issues even if his work, when he shows up, is satisfactory. Ehmann offers nothing but speculation that, from the innumerable

6

possible explanations for his termination, the real reason was the one prohibited reason.

The court, however, rejects Transcontinental's contention as to the significance of Ehman's allegations regarding his termination. Transcontinental argues that Ehmann's statement that he was fired during his probation period reflects his acknowledgement of an alternative explanation for his firing—he failed his probation period. (ECF No. 17 at 7; *see also* ECF No. 1, ¶ 29.) However, whether Transcontinental's proffered reason for terminating Ehmann was merely pretextual is a matter for summary judgment. *Cf. Swierkiewicz*, 534 U.S. at 515 (holding that a plaintiff need not plead a prima facie claim of discrimination to state a claim); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 807 (1973) (discussing the burden-shifting framework and the plaintiff's obligation to demonstrate that a stated reason for an adverse employment obligation was a pretext for discrimination).

Ehmann's allegation that an unnamed supervisor required him to use vacation time for an unrelated court appearance is likewise trivial. Ehmann does not allege that the supervisor somehow deviated from an established policy in requiring him to use vacation time. An employer imposing such a requirement appears ordinary and hardly suggestive of punitive, discriminatory, or retaliatory intent.

Perhaps Ehmann's best supporting evidence is that this unnamed supervisor allegedly referred to Ehmann as being in the "business of filing lawsuits." (ECF No. 1, ¶ 26.) Such a statement might be sufficient to suggest subjective hostility if his FLSA actions were the only lawsuits he filed or there was otherwise reason to infer

that he was referring to Ehmann's FLSA actions. But the requested time off did not relate to an FLSA action, and a review of publicly available Wisconsin circuit court records and the records of this court reveal that Ehmann filed over a dozen lawsuits against a range of defendants. Most of the suits were small claims actions that Ehmann opened within the past four years. Viewed in context, the supervisor's alleged statement tends to express, at best, hostility to Ehmann's general litigiousness rather than the fact that, many years ago, he filed two FLSA suits against a prior employer. Moreover, there is no allegation that this supervisor was the person who decided to fire Ehmann.

Liberally construing Ehmann's complaint in light of his pro se status and accepting the well-pleaded allegations as true, Ehmann has nonetheless failed to present sufficient allegations to exceed the speculative level. While it is *possible* that Transcontinental fired him because of his past protected activity, as the saying goes, anything is possible. It is not, however, *plausible* that Transcontinental terminated him in retaliation for protected activity. *See Iqbal*, 556 U.S. at 662 ("Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.") More is required to put his allegations into the realm of the plausible. His allegations amount to mere speculation that he was fired for protected activity he took with respect to his prior employer.

However, because it is not clear from the face of the complaint that amendment would be futile, the court will afford Ehmann the opportunity to file an amended

8

Case 1:25-cv-00528-BBC    Filed 08/05/25    Page 8 of 9    Document 20

complaint. *See Tate v. SCR Med. Transp.*, 809 F.3d 343, 346 (7th Cir. 2015). To rise to the level of plausibility, Ehmann must offer more in the form of specific details to suggest that Transcontinental was hostile enough towards his protected activity that it was the reason for firing him. Finally, any amended complaint fully takes the place of the original complaint. Therefore, the amended complaint must be complete without any attempt to incorporate any previously filed document.

**IT IS THEREFORE ORDERED** that Transcontinental US, LLC's motion to dismiss (ECF No. 16) is granted and the complaint is dismissed. The plaintiff shall file an amended complaint within 21 days of the date of this order. **Failure to file an amended complaint within 21 days of this order will result in the court dismissing this action.**

Dated at Green Bay, Wisconsin this 5th day of August, 2025.

*s/ Byron B. Conway*
BYRON B. CONWAY
United States District Judge